IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
: 
DONALD L. MIMM, III, :
:
: Civil Action No.: _____
Plaintiff, :
:
v. : JURY TRIAL DEMANDED
:
:
:
:
VANGUARD DEALER SERVICES, LLC, :
JAMES R. POLLEY, SCOTT IMPORTS, :
INC., and MARTIN HONDA, :
:
Defendants. :
----------------------------------------------------------------X

## COMPLAINT

Donald L. Mimm, III, by way of complaint against defendants, hereby avers as follows:

## THE PARTIES

1. Plaintiff Donald L. Mimm, III is an individual residing at 1816 Skiles Boulevard, West Chester, Pennsylvania 19382.

2. Defendant Vanguard Dealer Services, LLC ("Vanguard") is a New Jersey limited liability company with a principal place of business at 39 Two Bridges Road, Suite 350, Fairfield, New Jersey 07004.

3. Defendant James R. Polley ("Polley") is an individual with a business address of 39 Two Bridges Road, Suite 350, Fairfield, New Jersey 07004.

4. Defendant Martin Honda has a principal place of business at 298 East Cleveland

Avenue, Newark, Delaware 19711.

5. Upon information and belief, Defendant Martin Honda is a Delaware company wholly owned by Scott Imports, Inc.

6. Scott Imports, Inc. is a Delaware corporation with a registered agent of The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as plaintiff is a citizen of the Commonwealth of Pennsylvania, defendants Vanguard Dealer Services, LLC and James R. Polley are citizens of the State of New Jersey and defendant Martin Honda is a citizen of the State of Delaware.

8. Venue is proper in this Judicial District because defendant Martin Honda is domiciled in and is thus subject to personal jurisdiction in this District.

## BACKGROUND

9. Plaintiff has over twenty years of experience in selling warranties and other financial products as a Finance and Insurance Manager for various automobile dealerships all over the country.

10. Defendant Vanguard is in the business of providing warranties and other financial products for sale through automobile dealerships to individuals purchasing vehicles.

11. On or about January 24, 2011, plaintiff began working for defendant Vanguard as a Business Development Manager.

12. As the Business Development Manager at Vanguard, plaintiff's job duties included training the employees of automobile dealerships to sell the financial products offered

for sale by Vanguard so that such dealerships could sell as many of Vanguard's products as possible.

13.        When he was hired by defendant Vanguard, plaintiff was required to sign a Confidentiality and Non-Compete Agreement (the "Non-Compete").

14.        The Non-Compete provides, *inter alia*, as follows:

> 5.        Employee shall not during the course of his/her employment with Vanguard and/or for two (2) years following the termination of Employee's employment with Vanguard (regardless of whether such termination is voluntary, involuntary, with or without cause) directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, employee or agent, engage or participate in any employment or activity competitive with Vanguard.  Because Vanguard does business on a nationwide basis, and because Vanguard's competitors throughout the United States compete with Vanguard for business on a nationwide basis, this restriction applies to any competitive employment or activity in the United States.

15.        Vanguard did not provide plaintiff with a copy of the Non-Compete at the time that plaintiff signed it.

16.        One of the automobile dealerships plaintiff was required to deal with in his training duties was defendant Martin Honda.

17.        Plaintiff trained Kim Spencer, who was employed as a first-time Finance and Insurance Manager ("F&I Manager") by Martin Honda.  In connection with his job duties, plaintiff was privy to the sales volume generated by Kim Spencer and other F&I Managers.  Kim Spencer had little to no experience in the field or working as an F&I Manager.

18.        As a result of plaintiff's training, Kim Spencer earned an unusually high income for a Finance and Insurance Manager with little experience.

19.        In late May of 2011, Martin Honda advised plaintiff that it had to terminate the

employment of an F&I Manager because of an alleged ethical infraction on the part of the manager.

20.     On or about May 31, 2011, plaintiff visited Martin Honda to discuss the open F&I Manager position with Hommey Poursaied ("Poursaied") , the General Manager of Martin Honda. Poursaied asked plaintiff for plaintiff's assistance in locating an individual to fill the vacant F&I Manager position at Martin Honda.

21.     The F&I Manager position at Martin Honda was advertised by Martin Honda as follows:

> The F&I Manager performs a number of vital functions, including reviewing and confirming the agreed-upon sales figures, preparing salespeople to confer with customers about needed services or products, consulting with customers to determine their wants and needs and presenting products to fulfill them, obtaining credit approval, and preparing delivery documentation.
>
> . . ..
>
> The F&I Manager works in concert with the dealer principal and/or general manager to determine which lenders and suppliers of finance products will best be able to meet the criteria set by the Finance Department.
>
> . . .
>
> The F&I Manager also utilizes a menu to present available product options to the customer, counseling them based on what was cultivated during the initial customer interview.  This efficient and effective process also builds strong CSI [Customer Satisfaction index], as customers appreciate knowing about the wide range of protection products available to them, such as credit insurance, extended warranties, anti-theft devices and appearance protection kits.

22.     Plaintiff had two candidates in mind for the F&I Manager position at Martin Honda and wanted to obtain additional information about the job from Poursaied.

23.     Plaintiff asked Poursaied if Martin Honda offered a "demo" car for use by the F&I Manager.

24.	Poursaied responded: "we'll give *you* one."

25.	Plaintiff did not initially understand Poursaied's response, but Poursaied then asked plaintiff: "would you consider taking the job?"

26.	Plaintiff was surprised that Poursaied would offer and propose to plaintiff that plaintiff himself take the F&I Manager position at Martin Honda. Plaintiff, however, quickly realized that F&I Manager position would be a financially rewarding move for him.

27.	Plaintiff asked Poursaied several questions about the F&I Manager position, including questions about Martin Honda's management philosophy and its policies concerning work schedules, since F&I Managers customarily work most weekends and plaintiff needed at least one weekend off per month. Plaintiff advised Poursaied that before he could accept the F&I Manager position at Martin Honda that he would need to first speak with his girlfriend about the offer. Poursaied responded: "girlfriends come and go but jobs like this don't come along every day."

28.	The next day, June 1, 2011, plaintiff returned to Martin Honda and met with Poursaied. During that discussion, Poursaied asked plaintiff whether he had talked to his girlfriend about the offer for F&I Manager position. Plaintiff answered "yes." Poursaied then asked plaintiff: "did you make a decision?"

29.	Plaintiff advised Poursaied that he was leaning in the direction of accepting the position, but needed additional information from Poursaied about the position and Martin Honda before he could make a final decision.

30.	Plaintiff then asked Poursaied for a copy of Martin Honda's Pay Plan which contained the formulas that Martin Honda used for compensating its F&I Managers.

31.	In order to see the pay plan, Poursaied instructed plaintiff to talk to Ron, the

Finance Director at Martin Honda, so plaintiff went to talk to Ron. During that discussion, Plaintiff told Ron that Poursaied had offered plaintiff the job of F&I Manager at Martin Honda. In response, Ron gave plaintiff the pay plan said to plaintiff: "why don't you just take it [the job]?"

32. The following day, June 2, 2011, plaintiff went to another of the dealerships under his supervision, Performance Ford. By chance, plaintiff met up there with Neil Brennan, Vice President of Sales and Marketing for Vanguard, as Brennan was picking up a vehicle Brennan had purchased from that dealership.

33. Plaintiff informed Brennan that Martin Honda had offered plaintiff the F&I Manager position. Brennan told plaintiff that he should take the position because the opportunity was too good for the plaintiff to pass up. Brennan said to plaintiff: "I don't want to lose you as an employee but the good news is that at least you'll be selling our [Vanguard's] products." Brennan also admitted to plaintiff that if Brennan had lived closer to Martin Honda, he would actually apply for the position himself.

34. After plaintiff's conversation with Brennan, plaintiff was pleased to know and learn that Brennan, a member of Vanguard's senior management, was understanding about plaintiff's job offer from Martin Honda and had encouraged plaintiff to take the position. As a result, plaintiff telephoned Poursaied and told Poursaied that plaintiff had just had a conversation with Brennan and that Brennan was "unbelievably" supportive about the job offer and had advised plaintiff to take the position.

35. In response, Poursaied asked plaintiff when he could start if he accepted the position. Plaintiff advised Poursaied that he would need to give Vanguard two weeks' notice. Poursaied responded that he needed plaintiff before then because Poursaied had to give his other

employees a day off.  Plaintiff told Poursaied that he would talk to Vanguard and see what he could work out regarding the amount of notice that was needed.

36.	Poursaied then asked plaintiff the ad for the vacant F&I Manager position could be taken out of the paper since plaintiff would be accepting the position.  Plaintiff said "yes" and advised Poursaied to do so.

37.	The next day, June 3, 2011, plaintiff sent a text message to his immediate supervisor at Vanguard, Joel Perez ("Perez"), Vanguard's National Business Development Manager, informing Perez that plaintiff had received a job offer from Martin Honda.  Perez phoned plaintiff shortly thereafter and asked for more details about the offer.  Upon hearing further details, Perez informed plaintiff that he agreed with Brennan, that plaintiff should not pass up Martin Honda's offer.

38.	Perez also told plaintiff that there were only four or five dealerships that Perez himself would work for and that Martin Honda was one of them.

39.	Perez assured plaintiff that he would not object if plaintiff's resignation notice period was less than two weeks so that plaintiff could begin work at Martin Honda on Monday, June 13, 2011.

40.	Shortly after plaintiff's conversation with Perez, plaintiff received a phone call from James R. Polley, President of Vanguard.  Polley stated that Perez had just emailed him that plaintiff was resigning. Polley asked plaintiff if he had been offered a position at Martin Honda.  Plaintiff responded that he had.  Polley then said "I accept your resignation but you can't work at Martin Honda."  When plaintiff asked why, Polley said that plaintiff had signed an agreement with Vanguard, i.e., the Non-Compete, and under that agreement plaintiff was prohibited from going to work for a Vanguard customer.  Polley threatened plaintiff that if he took the position

7

plaintiff would be sued by Vanguard.

41.  Following that conversation with Polley, plaintiff realized that he needed to obtain a copy of the Non-Compete so he could determine what he was legally permitted to do.  Plaintiff called Polley back and told Polley that he was unaware that the Non-Compete prevented him from working for a Vanguard customer.

42.  Polley then asked plaintiff why he would want to leave Vanguard.  Polley said "Vanguard is a great place, you can make money here."

43.  After some additional discussion between the two, Polley asked plaintiff what plaintiff wanted to do.  In light of Polley's earlier threat, and fearful and uncertain that he would not have any job if he was legally prohibited from working for Martin Honda, plaintiff responded that he wanted to stay at Vanguard.

44.  A short time after this conversation ended, Michael Quinn, another Vanguard Vice President of Sales and Marketing, called plaintiff and said "let's just pretend nothing ever happened.  I'll see you Monday."

45.  When plaintiff arrived home that day, plaintiff telephoned Poursaied to advise him of the developments with Vanguard.

46.  Plaintiff told Poursaied that because of the threat of legal action by Vanguard, he could not work at Martin Honda.  Poursaied told plaintiff that the President of Martin Honda, William Camp ("Camp"), had already received a call from Polley, and that according to Camp, Polley was just "blowing off steam," and notwithstanding Camp's conversation with Polley, Camp still wanted plaintiff to come to work for Martin Honda.

47.  Plaintiff asked Poursaied if he was sure that Martin Honda still wanted to hire plaintiff and said: "if you do then I'll have to quit again" referring to his job with Vanguard.

8

48.     Poursaied answered "yes" and reassured plaintiff that Martin Honda definitely wanted to hire him.

49.     Based on those assurances, plaintiff informed Poursaied that he accepted Martin Honda's offer and would take the job. Poursaied then asked plaintiff when plaintiff could start work. Plaintiff responded that he would start on June 13, 2011. Poursaied asked if plaintiff could start earlier than that date and plaintiff responded that he would see what he could do.

50.     On Sunday morning, June 5, 2011, plaintiff telephoned Joel Perez and informed Perez that he had finally accepted the F&I Manager position at Martin Honda.

51.     Perez then asked plaintiff if the two of them could talk "off the record." Perez told plaintiff that Perez had been called into Polley's office and was reprimanded by Polley because both he and Brennan had advised plaintiff to take the position at Martin Honda. Perez told plaintiff that he would be foolish to turn down the job at Martin Honda. Perez congratulated the plaintiff on his new position and assured plaintiff: "if you need anything, let me know, the good thing is you'll be selling our products."

52.     Following his discussion with Perez, plaintiff emailed his resignation letter to Polley.

53.     Accepting plaintiff's resignation, Polley responded by saying "I was very clear that you could not work for Martin Honda. I accept your resignation. Your services are no longer needed."

54.     That next morning, Monday June 6, 2011, plaintiff telephoned Poursaied and left a voicemail saying he could start earlier than June 13 and would in fact report for work on Thursday, June 9, 2011.

55.     Poursaied returned plaintiff's call and told plaintiff that because of a second

conversation between Polley and Martin Honda President Camp, Martin Honda had now decided to "rescind the offer."

56. Plaintiff then telephoned Bill Camp, who told plaintiff that because of a conversation Camp had with Polley and the contract that plaintiff had signed with Vanguard, Martin Honda had to "rescind the offer for employment."

## COUNT ONE - BREACH OF CONTRACT

57. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

58. Defendant Martin Honda made an offer of employment to plaintiff which plaintiff accepted.

59. Defendant's offer and plaintiff's acceptance resulted in an oral agreement between plaintiff and defendant.

60. Defendant's purported "rescission" of its "offer" after plaintiff accepted defendant's offer operated as a breach of the contract between the parties.

61. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendant's breach of the contract between him and Martin Honda in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendant Martin Honda for compensatory damages in excess of $100,000 and attorneys' fees and costs and such other relief as the Court finds appropriate.

## COUNT TWO - PROMISSORY ESTOPPEL

62. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

63. Defendant Martin Honda made representations to plaintiff concerning its willingness to employ plaintiff as F&I Manager.

64. Plaintiff relied on Martin Honda's representations concerning its willingness to employ plaintiff to his detriment.

65. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendant's representations in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendant Martin Honda in excess of $100,000 for compensatory damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## COUNT THREE -TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

66. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

67. By falsely representing to Martin Honda that plaintiff was contractually prohibited from working at Martin Honda, defendants James R. Polley and Vanguard Dealer Services tortiously interfered with plaintiff's oral contract of employment.

68. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendant's misrepresentations in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendants James R. Polley and Vanguard Dealer Services for compensatory damages in excess of $100,000, punitive damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## COUNT FOUR - TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS RELATION

69. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

70. By falsely representing to Martin Honda that plaintiff was contractually prohibited from working at Martin Honda, defendants James R. Polley and Vanguard Dealer Services intentionally and maliciously interfered with plaintiff's pursuit of his employment opportunity with Martin Honda.

71. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendant's interference with his employment opportunity with Martin Honda in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendants James R. Polley and Vanguard Dealer Services for compensatory damages in excess of $100,000, punitive damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## COUNT FIVE - NEGLIGENT MISREPRESENTATION

72. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

73. Defendants James R. Polley and Vanguard Dealer Services negligently misrepresented to Martin Honda that plaintiff was prohibited from working at Martin Honda due to the Non-Compete agreement.

74. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendants' misrepresentations in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendants James R. Polley and Vanguard Dealer Services for compensatory damages in excess of $100,000, punitive damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## COUNT SIX - INTENTIONAL MISREPRESENTATION

75. Plaintiff hereby incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

76. Defendants James R. Polley and Vanguard Dealer Services intentionally misrepresented to Martin Honda that plaintiff was prohibited from working at Martin Honda due to the Non-Compete agreement.

77. Plaintiff has suffered damages in an amount in excess of $100,000 as a result of defendants' misrepresentations in the form of lost wages, lost commissions, lost employee benefits and a diminishment of employability.

WHEREFORE, plaintiff demands judgment against defendants James R. Polley and Vanguard Dealer Services for compensatory damages in excess of $100,000, punitive damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment from this Court against defendants Vanguard Dealer Services, LLC, James R. Polley, Scott Imports, Inc. and Martin Honda for compensatory damages in excess of $100,000, punitive damages and attorneys' fees and costs and such other relief as the Court finds appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues so triable.

Young Conaway Stargatt & Taylor, LLP

*/s/ Monté T. Squire*
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600
*msharp@ycst.com*
*msquire@ycst.com*

McDowell Riga Posternock, PC
Ellen M. McDowell
46 West Main Street
Maple Shade, NJ 08052
(856) 482-5544
*emcdowell@mrpattorneys.com*

*Attorneys for Plaintiff Donald L. Mimm, III*

Dated: August 19, 2011