IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD L. MIMM, III,                          )
                                              )
        Plaintiff,                            )
                                              )
    v.                                        )       Civil Action No. 11-736 GMS
                                              )
VANGUARD DEALER SERVICES, LLC,                )
JAMES R. POLLEY, SCOTT IMPORTS, INC.,         )
and MARTIN HONDA,                             )
                                              )
        Defendants.                           )

## MEMORANDUM

### I.    INTRODUCTION

The plaintiff, Donald L. Mimm, III ("Mimm"), filed this action against defendants

Vanguard Dealer Services, LLC ("Vanguard"), James R. Polley ("Polley"), Scott Imports, Inc.

("Scott Imports"), and Martin Honda on August 19, 2011. Mimm brought claims for breach of

contract and promissory estoppel against Scott Imports and Martin Honda (together, the

"Delaware defendants") and claims for tortious interference with contractual relations, tortious

interference with prospective business relations, negligent misrepresentation, and intentional

misrepresentation against Vanguard and Polley. (D.I. 1.) Presently before the court is Polley's

motion to dismiss for lack of personal jurisdiction and Vanguard's motion to transfer to the

District of New Jersey. (D.I. 13.) For the reasons that follow, the court will grant Polley's

motion to dismiss and deny Vanguard's motion to transfer.

### II.   BACKGROUND

The court repeats the factual background previously set forth in its October 4, 2012

Memorandum and Order denying the Delaware defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 24.)

On or about January 24, 2011, Mimm began working for Vanguard as a Business Development Manager and signed a Confidentiality and Non-Compete Agreement (the "NCA") at that time. (D.I. 1 at ¶¶ 11–14.) The NCA provided, in pertinent part:

Employee shall not during the course of his/her employment with Vanguard and/or for two (2) years following the termination of Employee's employment with Vanguard (regardless of whether such termination is voluntary, involuntary, with or without cause) directly or indirectly . . . engage or participate in any employment or activity competitive with Vanguard.

(*Id.* at ¶ 14.) During the course of his employment with Vanguard, Mimm trained employees at various car dealerships including Martin Honda. (*Id.* at ¶ 16.)

On or about May 31, 2011, the general manager of Martin Honda, Hommey Poursaied ("Poursaied"), offered Mimm a job as a Finance and Insurance Manager. (*Id.* at ¶¶ 20–25.) Mimm expressed interest in the position but requested time to consider the offer and, over the next couple of days, sought further information about the job. (*Id.* at ¶¶ 26–31.) On June 2, 2011, Mimm instructed Poursaied that Martin Honda could remove its newspaper ad for the open Manager position, since he would be accepting the job. (*Id.* at ¶ 36.)

On June 3, 2011, Mimm informed his immediate supervisor at Vanguard about the offer, indicated that he wished to begin at Martin Honda on June 13, 2011, and received permission to provide less than two week's resignation notice. (*Id.* at ¶¶ 37–39.) Shortly thereafter, Polley, the President of Vanguard, advised Mimm that he could not work for Martin Honda due to the NCA and threatened Mimm with legal action should he choose to disregard that agreement. (*Id.* at ¶ 40.) Mimm informed Polley that he would remain at Vanguard and telephoned Poursaied to

2

advise him of this development. (*Id.* at ¶¶ 43–45.) Poursaied then assured Mimm that Bill Camp ("Camp"), the President of Martin Honda, had already spoken with Polley and that Martin Honda still wished to hire him. (*Id.* at ¶¶ 46–48.) After receiving these assurances, Mimm informed Poursaied that he accepted Martin Honda's offer and could begin work on June 13, 2011. (*Id.* at ¶ 49.)

On June 6, 2011, Mimm again telephoned Poursaied and left a voicemail stating that he could actually start work that very week. (*Id.* at ¶ 54.) Poursaied returned this call and informed Mimm that, because of a second conversation between Camp and Polley, Martin Honda had decided to rescind its offer. (*Id.* at ¶ 55.) Camp himself then confirmed that Martin Honda had rescinded its offer due to the NCA and his conversation with Polley. (*Id.* at ¶ 56.)

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

Polley moves to dismiss Mimm's claims against him for lack of personal jurisdiction. (D.I. 13.) "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendants." *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119 (D. Del. 2000). "Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff must satisfy this burden through sworn affidavits or other competent evidence and cannot rely on his mere pleadings. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990), *cert. denied,* 498 U.S. 812 (1990); *Registered Agents, Ltd. v. Registered Agent, Inc.*,

3

No. 11-775-SLR, 2012 WL 3100404, at *2 (D. Del. July 31, 2012). When the court does not hold an evidentiary hearing on the motion to dismiss, however, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The court must accept the plaintiff's allegations as true and construe all disputed facts in his favor. *Id.*

In determining whether personal jurisdiction exists, the court engages in a two-step inquiry, asking whether jurisdiction is authorized under the long-arm statute of the state in which it sits and whether the exercise of jurisdiction satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864–65 (D. Del. 1982). To satisfy the second prong of this analysis, the court must determine that "minimum contacts" exist between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted).

B.      Motion to Transfer

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

Section 1404(a) sets forth a two-step transfer inquiry. The court first determines whether

4

the action could have been brought in the proposed transferee venue and then asks whether transfer to a different forum would best serve the interests of justice and convenience. *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at \*4 (D. Del. Aug. 20, 2012). At each step, the defendant bears the burden of demonstrating that transfer is appropriate, *id.*; *see also Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Simms v. Thomson Reuters Tax & Accounting, Inc.*, No. 10-904-LPS, 2011 WL 4501225, at \*1 (D. Del. Sept. 28, 2011).

## IV. DISCUSSION

The court first considers Polley's motion to dismiss for lack of personal jurisdiction and then addresses Vanguard's motion to transfer.

### A. Personal Jurisdiction Over Polley

Polley contends that the court lacks personal jurisdiction over him under 10 Del. C. § 3104, the Delaware long-arm statute. (D.I. 14 at 12.) Mimm, however, argues that jurisdiction exists under § 3104(c)(3), which provides that the court may exercise personal jurisdiction over any nonresident who "[c]auses tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c). Specifically, Mimm alleges that Polley called Camp, the President of Martin Honda, on two occasions to inform him of the NCA and threaten legal action. (D.I. 1 at ¶¶ 46, 55–56.) He contends that these calls were closely connected to Delaware—they were made to a person located in the state, caused a Delaware company to breach a contract, interfered with contract rights under Delaware law, and interfered with employment in Delaware—and thus should be viewed as "act[s] . . . in this State" that caused "tortious injury in the State," under §

5

3104(c)(3).  (D.I. 17 at 12–13.)

The court cannot agree with Mimm's analysis.  Jurisdiction under § 3104(c)(3) requires two elements—the alleged improper act must occur in Delaware and the resulting tortious injury must be in Delaware.  10 Del. C. § 3104(c)(3).  As noted above, Mimm bases his jurisdictional argument on Polley's two telephone calls to Camp, a person Polley knew to be located in Delaware.  (D.I. 17 at 12–13.)  The court is unconvinced, however, that a phone call originating outside of Delaware represents an act within this state merely because it was received here.[1]

In *Blue Ball Properties, Inc. v. McClain*, 658 F. Supp. 1310 (D. Del. 1987), Judge Latchum considered whether § 3104(c)(3) allowed for  jurisdiction over a Maryland general contractor hired to construct a pier in Maryland.  *Id.*  The plaintiffs, who were all Delaware corporations, alleged that the contractor breached their agreement and committed fraud by making several false assurances of performance during telephone calls to Delaware.  *Id.* at 1312–14.  While the *McClain* court did not individually address the jurisdictional effect of the phone calls, it broadly concluded that "even if [the contractor] committed any tortious acts, all of his acts or omissions occurred in Maryland. The contract was negotiated in Maryland, [the contractor's] alleged failure to perform occurred in Maryland, *and anything he may have done to mislead the plaintiffs was done in Maryland.*"  *Id.* at 1317 (emphasis added).  Implicit in this decision is the determination that a phone call originating in Maryland and received in Delaware does not constitute the requisite "act or omission in this State."

The court also finds guidance in a series of decisions from this district refusing to extend

---

[1] Polley's business address is in Fairfield, New Jersey, (D.I. 1 at ¶ 3), and Mimm offers no argument that Polley made the relevant telephone calls from outside his workplace.  Thus, while the court must construe all *disputed* facts in Mimm's favor, it is not required to depart from its natural assumption that these calls originated in New Jersey and not Delaware.

6

§ 3104(c)(3) jurisdiction to defendants who simply mailed materials into Delaware. *See, e.g.,* *Little Switz., Inc. v. Destination Retail Holdings Corp.*, No. 98-315-SLR, 1999 WL 223496, at \*7–8 (D. Del. Mar. 31, 1999) (finding that no "act" was committed in the state when materials were not "mailed from Delaware but to Delaware"); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1294 (D. Del. 1990) (declining to find jurisdiction where the defendant was alleged to have mailed statements and promotional materials from the United Kingdom into Delaware). These decisions rest on an understanding that "[t]he 'act' of mailing, for purposes of [§ 3104(c)(3)], is complete when the material is mailed." *Sears, Roebuck & Co.*, 744 F. Supp. at 1294. The court believes the same reasoning is applicable in the context of a telephone call—the act of making a tortious statement, for purposes of § 3104(c)(3), is complete when the caller utters that statement. The mere fact that the statement is almost immediately transmitted to a person in Delaware does not alter the fact that the statement itself was made in another state. The court agrees that "in order for a defendant to commit an act in Delaware and be subject to [§ 3104(c)(3)], the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Id.*

Additionally, the cases cited by Mimm do not persuade the court that jurisdiction exists. Mimm points to *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003), for the proposition that "the court is not limited to a 'personal, physical presence . . . within the borders of a state' when determining whether personal jurisdiction exists." *Id.* at \*9. *Hadley*, however, considered the scope of jurisdiction under a different subsection, § 3104(c)(1), which allows for personal jurisdiction over a person who "[t]ransacts any business or performs any character of work or service in the State." *Id.* at \*8–9. It therefore offers little guidance as to the

proper interpretation of § 3104(c)(3). Moreover, Mimm fails to recognize that the *Hadley* court's jurisdictional determination relied upon the extensive business ties between the movant and the state. *Id.* at \*8. No such ties bind Polley to Delaware. Mimm also cites *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112 (D. Del. 2000), arguing that even "a single act or omission in the state in which the injury was caused will suffice to establish personal jurisdiction." (D.I. 17 at 11.) This may be accurate, but it does little to address the court's fundamental concern that the act at issue in this case did not occur "in the state in which the injury was caused."

The court presumes that Polley was in New Jersey at the time of his two telephone calls and thus concludes that his allegedly tortious statements were made in that state. As such, Mimm has failed to demonstrate that § 3104(c)(3) permits personal jurisdiction over Polley. Thus, there is no need to continue to the Due Process prong of the jurisdictional inquiry.

B.     Transfer Under 28 U.S.C. § 1404(a)

Vanguard argues that the court should transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). As noted above, § 1404(a) establishes a two-step test for determining whether transfer is appropriate. The court will consider each step in turn.

1.     Propriety of the transferee venue

Section 1404(a) provides that an action may be transferred to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, the court may only order transfer to the District of New Jersey if venue would have been proper there and if that district court would have had the requisite personal jurisdiction and subject matter jurisdiction. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

Mimm argues that this action could not have been brought in New Jersey because courts in that state lack personal jurisdiction over the Delaware defendants. The court cannot agree with this conclusion. While it may be true that the Delaware defendants are not subject to personal jurisdiction in New Jersey, "[n]othing within § 1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims." *White v. ABCO Engineering Co.*, 199 F.3d 140, 144 (3d Cir. 1999). Were the defendants seeking transfer of this action in its entirety, the question of personal jurisdiction over the Delaware defendants would likely present a problem, *see Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993), but Vanguard seeks to transfer only those claims brought against it and Polley. As it is undisputed that these particular claims could have been brought in New Jersey, the court may proceed to examine the propriety of severance and transfer.[2]

## 2.   *Jumara* analysis

The second step of the § 1404(a) transfer inquiry has the court determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Mitek Sys., Inc.*, 2012 WL 3777423, at *4 (internal quotation omitted). In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995), the Third Circuit instructed courts to consider the various private and public interests protected by § 1404 rather than to any "definitive formula." 55 F.3d at 879. These private interests may include:

---

[2] The court recognizes that a proposed two-step severance and transfer may demand additional findings, beyond those required by a motion for transfer of an entire action. Indeed, the Third Circuit has instructed that, "[b]efore effecting such a severance, a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two separate forums." *White*, 199 F.3d at 144. The court, however, will not conduct an independent severance analysis at this stage, as the required balancing is both substantially incorporated into the court's *Jumara* analysis below and effectively mooted by the conclusion of that analysis that transfer itself is inappropriate.

> plaintiff's forum preference as manifested in the original choice; the defendant's
> preference; whether the claim arose elsewhere; the convenience of the parties as
> indicated by their relative physical and financial condition; the convenience of the
> witnesses—but only to the extent that the witnesses may actually be unavailable
> for trial in one of the fora; and the location of books and records (similarly limited
> to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the
> trial easy, expeditious, or inexpensive; the relative administrative difficulty in the
> two fora resulting from court congestion; the local interest in deciding local
> controversies at home; the public policies of the fora; and the familiarity of the
> trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court considers each of these *Jumara* factors in turn.

> a.     Private interest factors

The court first considers the plaintiff's choice of forum. Here, Mimm has chosen to bring this action in Delaware, and the court generally accords substantial deference to this decision. *See Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'").    A plaintiff's forum choice, however, is not dispositive, and Mimm's preference here is entitled to less weight than usual for two reasons.  First, as Vanguard points out, the NCA contains a permissive forum selection clause consenting to litigation in New Jersey. The Third Circuit has instructed that, within the *Jumara* framework, "a forum selection

10

clause is treated as a manifestation of the parties' preferences as to a convenient forum."
*Jumara*, 55 F.3d at 880. Thus, the selection clause suggests Mimm's amenability to litigation in
New Jersey and somewhat reduces the weight given to his Delaware forum choice.[3]
Additionally, Mimm has chosen to litigate outside his home state of Pennsylvania. (D.I. 1 at ¶
1.) As the court has previously observed, a plaintiff's choice of forum is entitled to less
deference when the selected forum is not his "home turf." *Auto. Techs. Int'l, Inc. v. Am. Honda
Motor Co., Inc.*, No. 06-187-GMS, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006).

Nevertheless, the court will not disregard a plaintiff's choice where he has a rational and
legitimate reason for choosing the forum. *Id.* The court finds that Mimm's selection was
reasonable, given that his claims against Vanguard "arise from telephone calls made to
Delaware, to Delaware companies located in Delaware, and interfering with a Delaware
employment contract, and affecting [Mimm's] status as an employee of a Delaware company and
his ability to work in Delaware." (D.I. 17 at 17.) While the significance of this factor is
somewhat reduced here, it clearly weighs against transfer.

On the other hand, Vanguard has expressed its clear desire to litigate in New Jersey. This

---

[3] The court, however, does not give the NCA's forum selection clause much effect here. As an initial matter, the forum selection clause is "permissive" and not "mandatory," (D.I. 14 at 19), and courts in the Third Circuit have traditionally granted less deference to such provisions, *see, e.g.*, *De Lage Landen Fin. Servs., Inc. v. Elite Tech. (N.Y.), Inc.*, No. 09-1538, 2009 WL 3152163, at *3 (E.D. Pa. Sept. 30, 2009); *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, No. 05-2309-HAA, 2006 WL 1675067, at *2–3, (D.N.J. June 15, 2006).

Additionally, it is not at all clear that the NCA's selection clause even applies in this case. While Vanguard cites *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997), for the proposition that a forum selection clause might "easily encompass[] a dispute in which the [agreement] is raised as a defense," that decision examined very different contract language. *Id.* at 1076. Unlike the "arising . . . in relation to" language at issue in *John Wyeth & Brother Ltd.*, the NCA applies only to disputes "arising under this Agreement." (D.I. 14 at 18.) This difference is significant, as the term "under" suggests a tighter nexus between the agreement and the dispute. Indeed, the *John Wyeth & Brother Ltd.* decision itself explicitly recognized this distinction, noting that "the clause is not limited to disputes growing out of the 1990 Agreement; it applies, not only to disputes 'arising under or out of' that agreement, but also to those 'arising in relation to' that agreement . . . [T]he phrase 'arising in relation to' is broader than 'arising under' . . . ." 119 F.3d at 1074–75. Thus, while the NCA's forum selection clause does somewhat reduce the deference given to Mimm's forum choice, its effect is minimal.

preference is also rational, given that Vanguard is a New Jersey company with its principal place of business in that state. (D.I. 14 at 17.) This factor weighs in favor of transfer.

The third private interest factor is whether the claim arose elsewhere. Vanguard seemingly contends that Mimm's claims arose in New Jersey, as Mimm was employed there and signed the NCA in that state. (*Id.* at 22.) Mimm, however, argues that the injury at the center of this case—his terminated employment with Martin Honda—arose in Delaware. As the events giving rise to this litigation occurred in both states, the court finds that this factor is neutral.

The remaining private interest factors—the convenience of the parties, the convenience of the witnesses, and the location of books and records—are also neutral, given the proximity of the court to the District of New Jersey. *See, e.g., PJM Interconnection, LLC v. Gorton*, No. 08-2160-JJF, 2009 WL 1649498, at *2 (D. Del. June 12, 2009) ("[G]iven the close proximity of the Eastern District of Pennsylvania to this Court and the residences of the parties, the Court finds that the factors related to convenience of the parties and witnesses are neutral regarding transfer."); *Invitrogen Corp. v. Incyte Genomics, Inc.*, No. 01-692-SLR, 2002 WL 883963, at *3 (D. Del. May 1, 2002) ("Given the proximity between the Delaware and Maryland courts, convenience of travel for the parties involved is minimal.").

b.     Public interest factors

Several of the *Jumara* public interest factors are not relevant in this case. Neither party questions the enforceability of a judgment issued by this court or the District of New Jersey and neither party suggests that court congestion in either forum weighs for or against transfer. Additionally, the public interest factor considering the "local interest in deciding local controversies at home," *Jumara*, 55 F.3d at 879, does not clearly weigh in either direction, as

12

both fora can claim a local interest in this dispute. Vanguard made the allegedly tortious statements in New Jersey and apparently based them on its interpretation of an agreement signed in that state. Mimm points out, however, that those statements interfered with an employment relationship in Delaware. (D.I. 17 at 20.) The court finds that neither forum has a demonstrably greater local interest in resolving this matter and therefore determines that the "local interest" factor is neutral.

The next public interest factor is "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 880. In considering this factor, the court must first deal with the threshold question of which state's law applies. *See Prell v. Columbia Sussex Corp.*, No. 07-CV-2189, 2007 WL 3119852, at \*3 (E.D. Pa. Oct. 22, 2007). Neither party devotes much attention to this question, and neither gives any consideration to the additional complexity created by the fact that Vanguard's communications with Martin Honda occurred via telephone and across state lines. Nevertheless, the court finds that this factor likely weighs in favor of transfer—the dispute will almost certainly require interpretation of the NCA, an agreement that, by its terms, is governed by the laws of New Jersey. (D.I. 14 at 18.)

The remaining public interest factors both counsel against transfer. First, *Jumara* instructs the court to examine "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. As discussed above, both parties agree that, in order to transfer the claims against Vanguard to the District of New Jersey, the court will need to sever the Delaware defendants, creating two separate actions. (D.I. 17 at 11–12; D.I. 19 at 6.) The court agrees with Mimm's contention that this "piecemeal and duplicative approach" would be "antithetical to judicial economy." (D.I. 17 at 19.) The Third Circuit has recognized

13

efficiency concerns in this context, warning that "[the court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." While the claims against Vanguard are not precisely the same as those against the Delaware defendants, the factual backgrounds of each are intertwined. The claims need not be identical to raise concerns of judicial economy. *See Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *17 (D. Del. May 18, 2012), *recommendation accepted*, 2012 WL 2090622 (D. Del. June 7, 2012). Accordingly, this factor weighs somewhat against transfer.

Finally, *Jumara* asks the court to examine the "public policies of the fora." Mimm argues that transferring this case would create a conflict with New Jersey's own public policy. (D.I. 17 at 19.) Specifically, he points to New Jersey's "entire controversy doctrine," which embodies the state's "strong public policy of litigating all claims against all parties in one action." (*Id.*) This doctrine "is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). "[I]n determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." *Meyers v. Hefferman*, 740 F. Supp. 2d 637, 647 (D. Del. 2010) (quoting *DiTrolio v. Antiles,* 662 A.2d 494, 502 (N.J. 1995)). Courts have applied the doctrine where successive litigation would "require a duplication of proof or evidence." *Id.* Vanguard contends that the claims against it and the claims against the Delaware defendants do not constitute one controversy and that the doctrine does not apply here. (D.I. 19 at 10.) All of the claims, however, arise from the same series of transactions that resulted in

14

Mimm's termination. As such, the court believes that separate litigation would require the duplication of evidence relating to the communications between Vanguard and Martin Honda. Since severing this action and transferring the claims brought against Vanguard would conflict with the public policy of New Jersey, this factor weighs against transfer.

      c. *Jumara* Analysis Summary

Considering the *Jumara* factors as a whole, the court finds that Vanguard has failed to meet its burden of demonstrating that the interests of convenience strongly favor transfer. The private interest factors are mostly neutral, with only the parties' respective forum choices pulling in opposite directions. Likewise, most of the public interest factors are irrelevant or neutral in this case. One public interest factor that likely weighs in favor of transfer is the trial court's familiarity with the applicable state law. The court, however, cannot find that this lone consideration is sufficient to overcome the deference accorded to the plaintiff's choice of forum.[4] Moreover, it is outweighed by the remaining public interest factors—"practical considerations that could make the trial easy, expeditious, or inexpensive" and "public policies of the fora"— which both counsel against transfer. The court therefore declines to transfer the claims against Vanguard.

## V.   CONCLUSION

For the foregoing reasons, the court will grant Polley's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and deny Vanguard's motion to transfer to

---

[4] The court agrees with the observation of Judge Simandle on the District of New Jersey that, while familiarity of the trial court with the relevant state law "is a consideration that could tip the balance in an otherwise close call . . . federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008). The mere fact that transfer might spare the court the trouble of interpreting New Jersey law does not equip Vanguard to meet its heavy burden. *See id.*

Case 1:11-cv-00736-GMS   Document 26   Filed 10/16/12   Page 16 of 17 PageID #: 213

the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Dated: October **16**, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD L. MIMM, III,                     )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )          Civil Action No. 11-736 GMS
                                         )
VANGUARD DEALER SERVICES, LLC,           )
JAMES R. POLLEY, SCOTT IMPORTS, INC.,    )
and MARTIN HONDA,                        )
                                         )
        Defendants.                      )
                                         )

## ORDER

At Wilmington this _16_ day of October 2012, consistent with the memorandum opinion

issued this same date, IT IS HEREBY ORDERED THAT:

1.  James R. Polley's Motion to Dismiss (D.I. 13) be GRANTED;

2.  The plaintiff's claims against James R. Polley be DISMISSED; and

3.  Vanguard Dealer Services' Motion to Transfer (D.I. 13) be DENIED.

CHIEF, UNITED STATES DISTRICT JUDGE